```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF VIRGINIA

                      Alexandria Division


PATRICK MANSFIELD, M.D.,       )
                               )
     Plaintiff,                )
                               )
        v.                     )     1:07cv941 (JCC)
                               )
ANESTHESIA ASSOCIATES, LTD.,   )
et al.,                        )
                               )
     Defendants.               )
```

## **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendants' Motions for Summary Judgment and for Leave to File a Revised Answer, and Plaintiff's Motion to Strike Defendants' Revised Answer. For the following reasons, the Court will grant Defendants' Motion for Summary Judgment, grant Defendants' Motion for Leave to File, and deny as moot Plaintiff's Motion to Strike.

### I. Background

Plaintiff Patrick Mansfield, M.D. ("Plaintiff") is a sixty-five (65) year-old African-American physician and Board Certified anesthesiologist who has practiced medicine in Virginia for more than twenty-five (25) years. For much of that time, Plaintiff was a shareholder and director of Defendant Anesthesia Associates, Ltd. ("AAL"). In September 1998, Plaintiff signed the Employment Agreement for Shareholder-Physicians

1

("Agreement"), which covered his employment relationship with AAL.  The Agreement stated that, upon the approval of seventy-five (75) percent of AAL's then current shareholders, AAL could terminate the Agreement at any time by providing the physician with ninety (90) days' prior notice.

AAL provided anesthesia services to Inova Alexandria Hospital ("Inova"), which was AAL's sole client.  In March of 2003, AAL and Inova entered into an Anesthesia Services Contract ("Service Contract").  Section 12 of the Service Contract governed Inova's termination of AAL's contract, and permitted Inova to cancel the Service Contract for cause or without cause with 90 days' notice.  The Service Contract also gave Inova the right to require that every doctor working for AAL be reasonably acceptable to Inova's Administrator.

In June 2005, Inova told Defendant Dr. Reed S. Underwood, M.D. ("Dr. Underwood"), who at the time was Chairman of Inova's Anesthesia Department and a shareholder and director of AAL, that it had received a complaint accusing Plaintiff of sexually harassing one of Inova's female employees.  Dr. Underwood informed Plaintiff of this complaint on June 17, 2005.  He then accompanied Plaintiff to Inova's Human Resources Department where Plaintiff was questioned regarding the alleged sexual harassment.

On June 30, 2005, Dr. Underwood and Defendants Dr. Robert D. Zurowski, M.D. ("Dr. Zurowski") and Dr. Chad F. Hanes, M.D. ("Dr. Hanes")[1] (collectively, with AAL, "Defendants") met with Kenneth Kozloff ("Kozloff"),[2] Senior Vice President and Administrator for Inova, as well as a representative from Inova's Human Resource Department.  At this meeting, Inova informed Defendants that it had investigated the incident involving Plaintiff and had concluded that the alleged sexual harassment had in fact occurred.  In support of its conclusion, Inova indicated that it had statements from ten to twelve women, but refused to divulge their identities.  Inova then informed Defendants that Plaintiff could not return to Inova because it believed that he was a threat to the safety and security of Inova's employees.  Kozloff reiterated Inova's position in a letter dated July 1, 2005.

AAL believed that it would lose the Service Contact with Inova if it permitted Plaintiff to return to Inova.  In addition, because Inova was AAL's only client, and Plaintiff could not return to Inova, Plaintiff could no longer perform any services for AAL.  Therefore, on July 5, 2005, Drs. Underwood,

---

[1] Drs. Zurowski and Hanes, like Dr. Underwood, were also shareholders and directors of AAL at that time.

[2] Kozloff is also a Defendant in this case, but was never served by Plaintiff.  All claims against Kozloff will be dismissed without prejudice.

Zurowski, Hanes, and David A. Spencer, M.D. ("Dr. Spencer")[3] met with Plaintiff and showed him a copy of Kozloff's July 1, 2005 letter. Defendants then asked Plaintiff to resign. When Plaintiff refused, Defendants suspended him without pay.

By letter dated August 2, 2005, AAL informed Plaintiff and the other directors that it intended to hold a director's meeting on August 23, 2005. At that meeting AAL was to consider the termination of Plaintiff's employment and to decide whether to ratify its prior decision to place Plaintiff on unpaid leave. On August 23, 2005, AAL's directors met and voted unanimously to terminate Plaintiff "without cause" under the terms of his Agreement that allowed AAL to terminate physicians with 90 days' notice and pay. The directors also voted unanimously to ratify Plaintiff's previous suspension. AAL then notified Plaintiff of its decision in a letter dated September 3, 2005.

On August 22, 2007, Plaintiff filed a Complaint in the Circuit Court for the City of Alexandria against Defendants, Dr. Spencer, Inova, and Kozloff seeking compensatory and punitive damages for violation of 42 U.S.C. § 1981 and Va. Code §§ 18.2-499 and -500, breach of contract, and tortious interference with contract. On September 17, 2007, Inova filed a demurrer in the Circuit Court for the City of Alexandria. That same day, Defendants timely filed a Notice of Removal of Civil Action with

---

[3] Dr. Spencer is also a Defendant in this case, but was never served by Plaintiff. All claims against Dr. Spencer will be dismissed without prejudice.

4

this Court and the Alexandria Circuit Court, effectively removing the case to this Court.  Plaintiff objected to removal and moved to remand, but this Court denied that objection on December 18, 2007.

On January 8, 2008, Inova filed a Motion to Dismiss all claims against it.  After appearing with new counsel, Plaintiff was given two opportunities to amend his Complaint, which he did on February 8, 2008 and again on March 17, 2008.  Plaintiff's Second Amended Complaint contained the four original claims, plus a claim for tortious interference with economic opportunities.  On March 24, 2008, Defendants answered Plaintiff's Second Amended Complaint.  Then, on April 28, 2008, the Court granted Inova's Motion to Dismiss.  Defendants filed the instant Motion for Summary Judgment on July 14, 2008.  Two days later, they filed a Revised Answer, which included a request by AAL for attorneys' fees and costs incurred in defense of Plaintiff's breach of contract claim.  On July 18, 2008, Plaintiff filed a Motion to Strike Defendants' Revised Answer.  On July 31, 2008, Defendants filed a Motion for Leave to File a Revised Answer.  These matters are currently before the Court.

## II. Standard of Review

Summary judgment is appropriate only if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 247-48 (1986); *Evans v. Techs. Applications & Serv., Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* (quotation omitted). The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id*. at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

### III. Analysis

Defendants move for Summary Judgment as to all claims against them. AAL also seeks attorneys' fees and costs incurred in defense of Plaintiff's breach of contract claim. Plaintiff, in his response, relinquishes his business conspiracy claim under Va. Code §§ 18.2-499 and -500 ("Count I"), as well as his claim for tortious interference with economic opportunities ("Count V"). Therefore, the Court will grant Defendants summary judgment on those counts, and need only address the parties' arguments for and against summary judgment on Plaintiff's 42 U.S.C. § 1981 claim ("Count II"), breach of contract claim ("Count III"), and

6

tortious interference with contract claim ("Count IV").  Before reaching those issues, however, the Court must first resolve Plaintiff's Motion to Strike and Defendants' Motion for Leave to File a Revised Answer.

**A. Plaintiff's Motion to Strike and Defendants' Motion for Leave to File a Revised Answer**

Plaintiff complains that because Defendants filed their Revised Answer long past the time within which they were permitted to do so as a matter of right, *see* Fed. R. Civ. P. 15(a), Defendants should have sought leave to amend their Answer before filing anything.  To remedy this problem, Defendants now seek leave to file a Revised Answer.  Defendants' Motion thus renders Plaintiff's Motion moot, and the Court will deny the latter as such.

Defendants' decision to file a Revised Answer in the first instance was based on information they obtained during the discovery process.  On May 16, 2008, both Plaintiff and Defendants learned that the Agreement between Plaintiff and AAL provided that the victorious party in a breach of contract suit was entitled to recover reasonable attorneys' fees and costs from the losing party.  Defendants' Motion for Summary Judgment includes such a request for fees and costs.  After submitting a Revised Answer without first seeking leave to amend, Defendants' now ask the Court for permission to amend their Answer.

Rule 15(a) instructs that a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). The Fourth Circuit has indicated that "[t]his liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing them on technicalities." *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 651 (4th Cir. 2007) (quoting *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)). While the Court is unaware of why Defendants waited roughly two months after learning of the costs and fees provision in the Agreement to file their Revised Answer, "delay alone is not sufficient reason to deny leave to amend." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). Most importantly for purposes of deciding this Motion, because Plaintiff was made aware of the provision at the same time Defendants were, the Court finds that Plaintiff would not be prejudiced by granting leave to amend. Consequently, the Court will grant Defendants' Motion for Leave to File a Revised Answer.

**B. Defendant's Motion for Summary Judgment**

<u>(1) Count II: Violation of 42 U.S.C. § 1981</u>

42 U.S.C. § 1981, like Title VII of the Civil Rights Act of 1964, prohibits discrimination in the workplace on the basis of race.[4]  A plaintiff making a § 1981 claim can avoid

---

[4] Plaintiff, in his brief in opposition to summary judgment, raises for the first time a claim for age discrimination. Plaintiff never pled this claim in any of his complaints, and the Court finds it is not properly before the Court.

summary judgment in one of two ways. One option is to present "direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). Alternatively, the plaintiff may proceed under the *McDonnell Douglas* "pretext" framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973). Under *McDonnell Douglas*, the plaintiff must first establish a prima facie case of discrimination. *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004). To establish a prima facie case, the plaintiff must show: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action with respect to compensation; and (4) that similarly-situated employees outside the protected class received more favorable treatment. *White v. BFI Waste Services, LLC*, 375 F.3d 288, 295 (4th Cir. 2004). Once the plaintiff establishes a prima facie case, the defendant must respond with evidence that it acted with a legitimate, non-discriminatory reason. *Love-Lane*, 355 F.3d at 786. If the defendant makes this showing, the plaintiff must then present evidence to prove that the defendant's stated reason was pretext. *Id.* Importantly, the establishment of a prima facie case "is never by itself sufficient to permit a plaintiff to escape an adverse summary judgment ruling," except where the employer

offers no legitimate reason for the adverse employment action. *Diamond*, 416 F.3d at 318.

Based on his Opposition to Defendant's Motion for Summary Judgment, it appears Plaintiff intends to proceed using the *McDonald Douglas* framework. Defendants do not challenge Plaintiff's claim that he has made a prima facie case under *McDonnell Douglas*. The Court agrees that Plaintiff has met his initial burden: (1) as an African-American, he is a member of a protected class; (2) all evidence indicates that he had otherwise satisfactorily performed his job; (3) his suspension and termination qualify as adverse employment actions; and (4) no similarly-situated employees outside Plaintiff's class were suspended or terminated. However, after carefully examining all of the evidence, and viewing the facts and drawing all reasonable inferences in the light most favorable to Plaintiff, the Court concludes that Plaintiff cannot avert summary judgment. Defendants have offered a legitimate, non-discriminatory reason for suspending and firing Plaintiff, and Plaintiff has produced no facts suggesting that the stated reason was pretextual.

Defendants articulated reason for suspending and firing Plaintiff was their fear that Inova would terminate the contract with AAL if it permitted Plaintiff to return to Inova. *See* Aff. of Dr. Reed Underwood ("Underwood Aff.") ¶¶ 14, 15, Ex. 4 to Defs.' Mot. for Summ. J.; Aff. of Dr. Chad Hanes ("Hanes Aff.") ¶ 12, Ex. 5 to Defs.' Mot. for Summ. J.; Dep. of Dr. Robert

10

Zurowski ("Zurowski Dep.") 18, July 3, 2008, Ex. 7 to Defs.' Mot. for Summ. J. Section 12 of the Service Contract between AAL and Inova permitted Inova to cancel the Service Contract for cause or without cause with 90 days' notice. *See* Service Contract, Ex. 3 to Defs.' Mot. for Summ. J., at AAL01060-61. It also gave Inova the right to require that every doctor working for AAL be reasonably acceptable to Inova's Administrator. *Id.* at AAL01044. Inova, through Kozloff, informed Defendants that it had investigated allegations of sexual harassment involving Plaintiff and had concluded that the alleged sexual harassment had in fact occurred. Hanes Aff. ¶ 8; Underwood Aff. ¶ 10; Zurowski Dep. 16. Inova told Defendants that it believed Plaintiff to be a threat to the safety and security of Inova's employees. Hanes Aff. ¶ 10; Underwood Aff. ¶ 12; Zurowski Dep. 16; Aff. of Kenneth Kozloff ("Kozloff Aff.") ¶ 6, Ex. 6 to Defs.' Mot. for Summ. J.; July 1, 2005 Letter, Ex. 9 to Defs.' Mot. for Summ. J. Kozloff then told Defendants that Plaintiff was not allowed to return to Inova.[5] Underwood Aff. ¶ 12; Hanes Aff. ¶ 10; Zurowski Dep. 15-16, 18, 26, 121-22. Based on these facts, Defendants arrived at the conclusion that they had to terminate Plaintiff or risk having AAL's contract with Inova revoked. Underwood Aff. ¶¶ 14, 15; Hanes Aff. ¶ 12; Zurowski Dep. 18.

---

[5] While Kozloff, in his Affidavit, does not affirmatively state that he told Defendants that Plaintiff could not return to Inova, there is ample evidence before the Court indicating that this statement was in fact made.

11

All of these facts are further supported by Plaintiff's deposition testimony. Plaintiff admitted he had no evidence to support his contention that race was a factor in AAL's decision to terminate his contract, or that Defendants' stated reasons were pretexual. Plaintiff testified that he was basing his discrimination claim on his "life experiences" and "things that have happened" during his lifetime. Dep. of Dr. Patrick Mansfield ("Pl. Dep.") 175, June 23, 2008, Ex. 1 to Defs.' Mot. for Summ. J. Plaintiff offered no evidence other than his opinion to support his claim. *Id.* 170-77. He also stated that he was not aware of any reason other than the reason articulated by Defendants for his suspension and termination, and agreed that if Inova told AAL that Plaintiff could not return to Inova, that AAL would have no choice but to end the employment relationship with Plaintiff. *Id.* 151-52, 166-67. Finally, Plaintiff's claim that Dr. Shea, a less-experienced, lower-paid, non-African-American doctor was hired in his place is belied by Plaintiff's testimony that he simply did not know whether Dr. Shea was actually hired to replace Plaintiff. *Id.* 165.

Where, as here, a defendant provides a nondiscriminatory reason for terminating the plaintiff, and that explanation is left unanswered, summary judgment in favor of the defendant is appropriate. *See Diamond*, 416 F.3d at 320 ("[I]n the face of [defendant's] nondiscriminatory – and unanswered – explanation for not promoting [plaintiff], we must conclude that

12

[plaintiff] has failed to forecast sufficient evidence of pretext to avert summary judgment.")(internal quotations omitted).  Such is the case here.  Therefore, Defendants are entitled to judgment as a matter of law, and the Court will grant Defendants summary judgment as to Count II.

### (2) Count III: Breach of Contract

Plaintiff contends that Defendants breached the Agreement between the parties by suspending and firing him for discriminatory reasons, and by failing to provide him with 90-days' notice of termination.  In September 1998, Plaintiff signed the Agreement, which covered his employment relationship with AAL.  *See* Employment Agreement, Ex. 2 to Defs.' Mot. for Summ. J.; Pl. Dep. 13-14.  The Agreement stated that, upon the approval of 75 percent of AAL's then current shareholders, AAL could terminate the Agreement at any time by providing Plaintiff with 90 days' prior notice.  Employment Agreement ¶ 3(c).  During his deposition, Plaintiff acknowledged that he was aware that AAL could terminate him for any reason, with or without cause, and that he was an at-will employee.  Pl. Dep. 14-15, 22-23, 139, 193.

On July 5, 2005, after being informed of the accusations against Plaintiff, as well as of Inova's determination that Plaintiff posed a threat to the safety and security of Inova employees, Defendants suspended Plaintiff.  Hanes Aff. ¶ 16; Underwood Aff. ¶ 18; Pl. Dep. 117.  By letter

13

dated August 2, 2005, AAL informed Plaintiff and the other directors that it intended to hold a director's meeting on August 23, 2005, when it would consider the termination of Plaintiff's employment and decide whether to ratify its prior decision to place Plaintiff on unpaid leave. *See* Aug. 2, 2005 Notice, Ex. 11 to Defs.' Mot. for Summ. J.; Pl. Dep. 98. On August 23, 2005, AAL's directors met and voted unanimously to terminate Plaintiff "without cause" under the terms of the Agreement that allowed AAL to terminate Plaintiff with 90 days' notice and pay. *See* Aug. 23, 2005 Minutes, Ex. 12 to Defs.' Mot. for Summ J.; Hanes Aff. ¶¶ 17-19; Underwood Aff. ¶¶ 19-21. The directors also voted unanimously to ratify Plaintiff's previous suspension. *Id.* AAL then notified Plaintiff of its decision in a letter dated September 3, 2005. Sep. 3, 2005 Letter, Ex. 13 to Defs.' Mot. for Summ. J.

Plaintiff admitted he knew that more than the required 75 percent of shareholders had voted to terminate his Agreement. Pl. Dep. 19. Plaintiff also admitted he had received 90 days' pay, and during those 90 days he did not work. *Id.* 17-21. And, as discussed above, Plaintiff has provided no evidence that he was terminated for any reason other than the reason articulated by Defendants. The Court therefore finds that there are no genuine issues of material fact as to the breach of contract claim, and that Defendants are entitled to judgment as a matter

of law.  The Court will grant Defendants summary judgment as to Count III.

Paragraph 16 of the Agreement between AAL and Plaintiff provides that if any party "commences legal proceedings" under the Agreement, "the prevailing party in any such proceedings shall be entitled to recover from the losing party its costs of suit, including reasonable attorneys' fees."  Employment Agreement ¶ 16.  Because the Court has granted Defendants summary judgment on Plaintiff's breach of contract claim, it will award AAL reasonable attorneys' fees and costs relating to that claim.

### (3) Count IV: Tortious Interference with Contract

A party cannot, as a matter of law, interfere with its own contract.  *Fox v. Deese*, 362 S.E.2d 699, 708 (Va. 1987).  Because a corporation's contract is also its agent's contract, the agent cannot interfere with that contract either.  If the officers and directors of a corporation act within the scope of their employment, then they are agents of the corporation.  *Id.*  Applying these principles here, if the individual Defendants acted within the scope of their employment when they suspended and terminated Plaintiff, they cannot be held liable for tortious interference.

To prove a claim of tortious interference with contract, a plaintiff must show: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy; (3) intentional interference

15

inducing or causing a breach or termination of the relationship or expectancy; and (4) damage to the party whose relationship or expectancy has been disrupted.  *Perk v. Vector Resources Group, Ltd.*, 485 S.E.2d 140, 143 (Va. 1997); *Duggin v. Adams*, 360 S.E.2d 832, 835 (Va. 1987).  Where, as here, the plaintiff alleges interference with an at-will contract, the plaintiff must also show that the defendant (5) employed improper methods, which include illegal or independently tortious conduct.  *Perk*, 485 S.E.2d at 143; *see also Duggin*, 360 S.E.2d at 836.

As the Court has already discussed, all of the evidence in this case indicates that Defendants terminated Plaintiff's Agreement because Inova did not want Plaintiff to return to the hospital due to the sexual harassment allegations against him.  Plaintiff admits as much, and admits he has no evidence to the contrary.  *See* Pl. Dep. 181-85.  Consequently, there is nothing to indicate that the individual Defendants acted outside the scope of their employment, or that they employed "unlawful means."  The Court therefore finds that there are no genuine issues of material fact as to the tortious interference claim, and that Defendants are entitled to judgment as a matter of law.  The Court will grant Defendants summary judgment as to Count IV.

### IV. Conclusion

For these reasons, the Court will grant Defendants' Motion for Summary Judgment, grant Defendants' Motion for Leave to File, and deny as moot Plaintiff's Motion to Strike.

An appropriate Order will issue.

```
August 8, 2008                    _____/s/_____
Alexandria, Virginia                        James C. Cacheris
                                  UNITED STATES DISTRICT COURT JUDGE
```